UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN ASTLEY,<br><br>               Plaintiff,<br><br>  v.<br><br>THE BOEING COMPANY,<br><br>               Defendant. | CASE NO. C17-592 MJP<br><br>ORDER ON SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Defendant The Boeing Company's Motion for Summary Judgment (Dkt. No. 24),

2. Opposition of Plaintiff Ryan Astley to The Boeing Company's Motion for Summary Judgment (Dkt. No. 34),

3. Defendant The Boeing Company's Reply Brief in Support of Motion for Summary Judgment (Dkt. No. 38),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is GRANTED as to all claims; Plaintiff's lawsuit is DISMISSED with prejudice.

## Background

Plaintiff worked as a fuel cell assembler in Boeing's Renton plant. Months prior to the incident at the heart of this lawsuit, he had received a Corrective Action Memo ("CAM") for using derogatory language to a co-worker. (Dkt. No. 26, Decl. of Wagenblast at ¶ 9; Dkt. No. 26-1, Ex. D.)

On March 6, 2014, Plaintiff was working in a confined space with another crew member, McCarty. There is no dispute at this point that McCarty was behind Plaintiff in the space and Plaintiff kicked McCarty in the face. The following day, McCarty initiated a complaint with Boeing's Human Resources department ("HR"). (Id., Ex. B.) The HR investigator (Brogowski) interviewed McCarty, several co-workers present at the site (Plaintiff and McCarty were the only employees in the space; there were no eyewitnesses), and Plaintiff (twice). (Dkt. No. 28, Decl. of Brogowski at ¶¶ 7-10.)

The report of the first interview with the HR investigator reflects that Plaintiff alleged that he "felt something touch my genitals," "flinched and hit Kyle McCarty with my foot." (Dkt. No. 28-1, Ex. M.) However, Plaintiff refused to sign that document. (Id.) The report of the second interview with the HR investigator (which Plaintiff did sign as "true and accurate") reflects that Plaintiff denied knowing that he had kicked McCarty. ("I had no idea that I kicked him;" Dkt. No. 28-1, Ex. N. at 1.)[1] The HR investigator concluded that McCarty was more credible than Plaintiff and that Plaintiff had purposely kicked McCarty in the face. (Id., Ex. O.)

Upon review of the report, Defendant's HR department found that Plaintiff had violated "Expected Behavior No. 1" ("Treat Others and Expect to Be Treated With Respect, Dignity, and

---

[1] Plaintiff's declaration indicates he alleged that he was "sexually assaulted" during the first interview and that HR refused to include that allegation in the report or investigate it further. Regarding the second interview, he alleges that he was told if he did not sign the statement "as is" he would be fired. (Dkt. No. 37, Decl. of Astley at ¶ 5.)

Trust") of the Boeing Employee Corrective Action Manager ("ECAPR"); specifically, a "1D" or "Physical Confrontation" violation. The ECAPR indicates that such a violation "[u]sually results in discharge." (Dkt. No. 26, Decl. of Wagenblast, Ex. C at 10.) Additionally, Plaintiff's prior violation (a "1E" in the ECAPR), according to the "General Factors Matrix," meant that this violation warranted "progressive action." (Id. at 5.)

By midday on March 18, 2014, HR had decided that Plaintiff would be discharged. (Decl. of Wagenblast at ¶ 11.) A summary of the department's rationale was prepared, as well as a CAM to be issued by Plaintiff's supervisor Bowen. (Id.; Exs. E, F.) Bowen was informed of the decision on that same date, and scheduled a termination meeting for March 20. (Dkt. No. 27, Decl. of Bowen at ¶¶ 5-6.)

Also on March 18 (after the decision to terminate had been made), Plaintiff met with HR Generalist Wagenblast. During the course of the meeting, Plaintiff posed a hypothetical to Wagenblast about the company's response to a complaint by a female employee of sexual harassment by a male co-worker; inquiring about the process for reporting and investigating such a complaint and asking if the two employees would be separated. The HR staff person reported that she offered Plaintiff several opportunities to disclose more details or file a complaint, but that Plaintiff declined, indicating he was "just curious" about the policy. (Decl. of Wagenblast at ¶¶ 13-15.) Plaintiff confirmed at deposition that this is what occurred. (Dkt. No. 25-1, Depo of Astley, 171:10 – 173:17.)

Boeing HR forwarded a summary of the conversation to Boeing's Equal Employment Opportunity ("EEO") group the next day. (Decl. of Wagenblast at ¶ 15; Ex. G.) EEO Investigator Winship contacted Plaintiff and interviewed him on the morning of March 20. (Dkt. No. 29, Decl. of Winship at ¶¶ 4, 6.) During that interview, Plaintiff alleged that McCarty had

sexually assaulted him on the day of the kicking incident by "cupp[ing] and squeeze[ing] his genitals." (Id. at ¶ 9.) EEO opened an investigation into the allegation and Defendant decided to postpone Plaintiff's discharge pending the completion of the investigation. (Dkt. No. 30, Decl. of Young at ¶6, Ex. S; Decl. of Wagenblast at ¶ 16.)

Plaintiff reports that, following the filing of the EEO complaint:

- He was required to work in proximity to McCarty on March 25.[2]
- He was advised by his supervisor (Bowen) that "what happens in the tank, stays in the tank."
- "Snitches get stitches" notes appeared on the table in the break area where he took his breaks.
- His lunch box was stamped with McCarty's BEMS ID ("bug") over a dozen times.

Decl. of Astley at ¶ 7 (with the exception of the "working with McCarty" claims, no evidence in support of any of these allegations appears in the record). He further claims (again, without evidence) that he informed EEO of the retaliatory harassment and "initially no action was taken." (Id. at ¶ 8.)

At the conclusion of the EEO investigation, Winship issued a report which concluded that the truth of the incident between Plaintiff and McCarty came down to a credibility determination. Based on a number of factors -- Plaintiff changing his story between the first and second HR interview and then again between the HR and EEO interviews; plus Plaintiff's knowledge of an impending disciplinary proceeding as a motive to embellish the incident (Decl. of Owen, Ex. P at

---

[2] This is a confusing, poorly documented allegation. Plaintiff's "Statement of Relevant Facts" indicates that Plaintiff was assigned to work with McCarty on one day only – March 25, 2014. Plaintiff Mtn at 6. The declaration of Plaintiff to which the briefing cites contains no date and it is not clear from Plaintiff's statement whether the assignment was for a single day or longer. Decl. of Astley at ¶ 7. The "Argument" section of Plaintiff's briefing contains a purported quote from Plaintiff (with no citation to the record) claiming that he was working next to McCarty "[e]very day." Plaintiff Mtn at 14. At oral argument, the allegation was clarified: Plaintiff continued to work (without incident) on the same team as McCarty (and in proximity to him on March 25), until he complained and was reassigned.

15-16)³ – she did not find Plaintiff credible regarding the incident and no action was taken on his complaint.

Following the issuance of the EEO report, Boeing resumed Plaintiff's discharge process. On April 15, 2014, Plaintiff's employment was terminated. (Decl. of Wagenblast at ¶ 20; Decl. of Bowen at ¶ 10, Exs. K-L; Astley Depo. at 153:14-24.) Astley attempted to grieve the discharge through his union, but apparently a grievance was never filed.⁴ On March 16, 2017, Plaintiff filed this action; his later-filed amended complaint alleges claims of gender discrimination, hostile work environment, unlawful retaliation, and breach of contract under the Washington Law Against Discrimination ("WLAD") and Washington common law. (Dkt. No. 12.)

**Discussion**

Legal standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present significant and probative evidence to

---

³ There is evidence that Plaintiff was advised of the meeting (and its nature) on the morning of March 20, prior to his meeting with the EEO investigator. (Depo of Astley at 175-76; Dkt. No. 27, Decl. of Bowen ¶ 7.)

⁴ At his deposition, Plaintiff said he thought the union had pursued a grievance (although he never saw any paperwork or was informed of any results) (Depo of Astley, 158:1 – 162:9.) Ms. Wagenblast from HR said it was her "understanding the union opted not to pursue a grievance on [Plaintiff's] behalf." Decl. of Wagenblast at ¶ 21.

support its claim or defense. <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir.1991).

<u>Hostile work environment</u>

Plaintiff's hostile work environment (HWE) claim is plead such that it can be read to allege HWE on the basis of both gender and retaliation. (Dkt. No. 12, Am. Complaint at ¶ 4.9.) At oral argument, Plaintiff's counsel indicated that Plaintiff was withdrawing the gender-based HWE claim and only proceeding on his retaliation-based HWE claim. The Court's analysis proceeds accordingly.

To establish a claim for retaliation-based HWE, Plaintiff is required to demonstrate "that the conduct complained of is sufficiently severe and pervasive to affect the terms and conditions of employment;" in evaluating that proof, the courts consider "the frequency and severity of the [retaliatory] conduct, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." <u>Moore v. King County Fire Protection Dist. No. 26</u>, 2005 WL 2898065 at *6 (W.D. Wash. Oct. 31, 2005)(citing <u>Washington v. The Boeing Co.</u>, 105 Wn.App. 1, 10 (2000)).

Additionally, Plaintiff must be able to "impute" the conduct responsible for the HWE to his employer; under the WLAD, it may be imputed to his employer in two ways: (1) if the person responsible for the conduct "is an owner, partner, corporate officer, or manager," or (2) if the person responsible "is the plaintiff's supervisor or co-worker if the employer authorized, knew, or should have known of the [conduct] and… failed to take reasonably prompt and adequate corrective action." <u>Davis v. Fred's Appliance, Inc.</u>, 171 Wn.App. 348, 362 (2012)(citing <u>Glasgow v. Georgia-Pacific Corp.</u>, 103 Wn.2d 401, 407 (1985)).

Boeing attacks the retaliation-based HWE cause of action on the grounds of "severity and pervasiveness" and "imputability."

In his brief, Plaintiff lists the following "retaliatory conduct" as affecting the terms and conditions of his employment:

- After complaining about McCarty's behavior, he was assigned to work alongside him.
- Comments from his supervisor (Bowen) following the initiation of his EEO complaint that "what happens in the tank, stays in the tank." Decl. of Astley at ¶ 7.
- Upon learning of Plaintiff's complaint to EEO, Boeing HR inquired of EEO whether it could "move forward" with his discharge.
- Defendant's investigation revealed that McCarty had referred to co-workers, including Plaintiff, as "rats." (Ex. P at p. 24.)

(Dkt. No. 34, Response at 14.) The Court finds the last two examples of "retaliation-based HWE" to be without merit in the sense (as Plaintiff conceded at oral argument) that there is no proof that either fact affected the terms and conditions of his employment because in neither case does Plaintiff indicate that he was aware – while employed with Boeing – of either of these occurrences.

Nor can the Court find that his remaining allegations (being assigned to work on the same team as McCarty[5] or his supervisor's "what happens in the tank" comments) rise to a level of so "pervasive and severe" as to impact the terms and conditions of employment. The Court cannot help but be struck by the fact that nowhere in his declaration or deposition testimony does Plaintiff ever testify that he felt threatened or humiliated in his work environment or that his work performance was otherwise negatively affected by anything that was occurring during this

---

[5] The Court finds it noteworthy that, by Plaintiff's own testimony, on the one occasion he alleges the two of them were working in "proximity," he and McCarty were separated by a physical barrier (they performed their jobs on either side of a jet aircraft wing) while they worked and Plaintiff "occupied [McCarty's] work space after his portion of the build was done" (Decl. of Astley at ¶ 7; emphasis supplied). There is no allegation or proof that Plaintiff was placed in a vulnerable or threatening position vis-à-vis McCarty.

period of time.  There is no evidence that the "terms and conditions" of his employment were in any way impacted by the retaliation of which he complains.[6]

Furthermore, the Court agrees with Defendant that, in the context of the "retaliation-based HWE," none of this can be imputed to Boeing.  In the first place, Plaintiff makes no claim that he reported any of this to anyone in authority.[7]  Plaintiff does argue that Bowen, Plaintiff's line supervisor, (1) was a "manager" by virtue of his ability to affect Plaintiff's working conditions through work assignments (*see* WPIC 330.24 (6th ed.); Robel v. Roundup Corp., 148 Wn.2d 35 (2002)); and (2) could be "reasonably inferred" to have assigned Plaintiff to work alongside McCarty post-complaint.  But Defendant presents case law that Boeing line supervisors have previously been held not to represent "management" as that term is applicable here (*see* Sears v. Boeing Co., 2012 WLAD 1237572 at *2; Washington v. Boeing Co., 105 Wn.App. 1, 11 (2000)).  The Court sees nothing in this case which dictates a departure from that line of cases.   And Plaintiff is simply inviting the Court to speculate that Bowen assigned him to work with McCarty – he has no evidence who was responsible for that decision.  (Depo of Astley at 210:8-10.)

Based on the undisputed facts, the Court finds as a matter of law that the conduct of which Plaintiff complains in his retaliation-based HWE claim cannot be imputed to Defendant. Combined with the lack of evidence of any "severe and/or pervasive" impact on Plaintiff's work environment (or on Plaintiff), there is only one conclusion: the claim cannot stand.

---

[6] Although Plaintiff does not cite them in his briefing on this cause of action, the Court makes the same finding as regards his allegations of the "Snitches get stitches" notes in the break room and McCarty's BEMS ID being stamped on his lunchbox.  These are "offensive utterances" at most, neither "physically threatening or humiliating" with no evidence that either unreasonably interfered with his work performance.

[7] Nor can Plaintiff argue that Boeing somehow should have known that McCarty was at risk for "sexually inappropriate" behavior.  No rebuttal is offered to the testimony of Defendant's HR manager that, prior to Plaintiff's March 2014 complaint, the company had received no complaints of workplace harassment or sexually inappropriate conduct by McCarty.  (Dkt. No. 30, Decl. of Young ¶ 7.)

Retaliation

The elements of this cause of action under WLAD are:

1. Engagement in protected activity
2. Adverse employment action
3. A causal link between the protected activity and the adverse action

Hines v. Todd Pac. Shipyards, 127 Wn.App. 356, 374 (2005). The burden then shifts to Defendant to demonstrate a legitimate, non-retaliatory reason for the employment action, then back to Plaintiff for evidence that Defendant's reason is merely pretextual to its retaliatory motive. Renz v. Spokane Eye Clinic, P.S., 114 Wn.App. 611, 618 (2002).

This claim falls to summary judgment based on two factors. The first is the issue concerning if and when Plaintiff engaged in "protected activity." The "if" is easy – no one disputes that complaints about sexual harassment qualify as protected activity under WLAD. The determinative question is the "when" – Plaintiff wants the Court to characterize every statement he made regarding McCarty's behavior as "protected activity" – in other words, viewing the evidence in the light most favorable to him, from the point where he explained/complained to his co-workers that McCarty had touched his groin, to his (inconsistent) explanations of the incident to the HR investigator, all the way through to his initiation of the EEO complaint for sexual assault/harassment.

In support of this argument, Plaintiff cites Estevez v. Faculty Club, 129 Wn.App. 774, 798 (2005) for its holding that "to show that []he engaged in a 'statutorily protected activity,' [Plaintiff] need only prove that [his] complaints went to conduct that was at least arguably a violation of the law." But the operative word is "complaint" – even viewed in the light most favorable to Plaintiff, the Court cannot reasonably characterize either his statements to his co-

workers or to the HR investigator as "complaints" in the sense that he was requesting some sort of corrective action for an alleged violation of company policy or state/federal law.[8] For instance, until Plaintiff formally filed his EEO complaint, he did not address his comments to anyone in authority; i.e., anyone who could do anything about them. There is a difference between explaining and justifying one's behavior and reporting a problem with the intention that something be done to correct it. The latter is a "complaint;" the former is not.

Bullen v. Sessions, 716 Fed.Appx. 582 (9th Cir. 2017) illustrates the point: in finding that the Plaintiff in that matter "failed to direct this court to evidence in the record showing that he engaged in protected activity" prior to his adverse employment action, the Ninth Circuit pointed out that

> … the record does not show that he complained to his supervisor about discrimination, only that he opposed the hiring decision for other reasons. Further… the record does not show that he voiced his support of his coworker's EEO complaint to his supervisor, only that he supported his coworker privately.

Id. at 584. Similarly, Plaintiff did not direct his comments to anyone in a supervisory or other authoritative capacity until his EEO interview on March 20. His explanation of why he kicked McCarty up to that point does not rise to the level of "protected activity." Only his decision to initiate an EEO investigation into his allegations of "sexual assault" constitutes protected activity.

When this analysis is combined with the fact that Defendant had already determined to fire Plaintiff by March 18 (two days before his EEO complaint), it is apparent that Plaintiff

---

[8] Although Estevez was a Title VII case, it is instructive that the Estevez court cited to another Ninth Circuit case for the proposition that "opposition activity is protected when it is *based on a reasonable belief that the employer has engaged in an unlawful employment practice*." Id. (citing Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002); emphasis supplied). Mr. Astley's comments up until the EEO interview can only be reasonably characterized as "explanations" or "justifications" – there is no sense (and he does not even allege) that he was seeking corrective action prior to the EEO interview.

cannot establish a causal connection between his complained-of adverse employment action and his protected activity. Because Plaintiff has failed to establish his *prima facie* case of retaliation, the Court need not reach the question of Defendant's legitimate rationale and Plaintiff's "pretext" rebuttal. Defendant is entitled to summary judgment of dismissal on this cause of action.

<u>Gender discrimination</u>

The elements of this cause of action require Plaintiff to establish that:

1. He is a member of a protected group
2. He is qualified for his position
3. He was the recipient of an adverse employment action
4. Similarly situated individuals outside the protected class were treated differently.

<u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599, 603 (9th Cir. 2004).

Proof of different treatment of similarly situated individuals requires "comparators."

This court has previously held that "the 'similarly situated' analysis is stringent." <u>Blair v. Alaskan Copper & Brass Co.,</u> Case No. C07–1877–RAJ, 2009 WL 2029963, at *7 (W.D.Wash. July 10, 2009). In order to prevent the courts from "second-guessing" a reasonable employment decision, "[t]he comparator must be nearly identical to the plaintiff." <u>Id.</u> (quoting <u>Wilson v. B/E Aerospace, Inc.,</u> 376 F.3d 1079 (11th Cir.2004)). Plaintiff has failed to present any evidence of similarly situated [coworkers]…

<u>Salas v. Indep. Elec. Contractors Inc.</u>, 11-1748 RAJ, 2013 WL 1898249, at *8 (W.D. Wash. May 7, 2013), <u>aff'd,</u> 603 Fed. Appx. 607 (9th Cir. 2015).

Plaintiff is in a similar bind here. His only "proof" that he was treated differently from persons outside his protected group is completely anecdotal, unsupported statement that

> I know of several women at Boeing who complained of sexual assault while working for Boeing but were not fired like I was. Instead, they were either re-assigned to a different shop or were transferred to different cities entirely.

Decl. of Astley at ¶ 11. When questioned at his deposition, Plaintiff testified "I don't remember their names at this time." (Depo of Astley at 218:7-12.) This is inadequate to his burden of proof. Defendant is entitled to summary judgment dismissing Plaintiff's retaliation claim.

Breach of contract

In Washington, employment policies and procedures can form either a binding implied employment contract or create enforceable promises concerning terms of employment. Quedado v. Boeing Co., 168 Wn.App. 363, 367-68 (2012)(*citing* Burnside v. Simpson Paper Co., 123 Wn.2d 93, 104 (1994)). Written materials may create an implied contract modifying the at-will relationship or may induce an employee to remain on the job by creating an atmosphere of job security and fair treatment through "promises of specific treatment in specific situations." Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn.App. 52, 60 (2008)(*quoting* Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 223 (1984). Plaintiff's legal theory in support of this cause of action appears to rely on the allegation that certain Boeing's employment documents fall into the "promises of specific treatment" category. The Court does not agree.

Plaintiff first argues that the Boeing Code of Conduct specifically prohibits the kind of retaliatory behavior to which he alleges he was subjected. ("Retaliation against employees who come forward to raise genuine concerns will not be tolerated;" Dkt. No. 37-1, Boeing Code of Conduct.) Having failed, however, to establish a *prima facie* case of retaliation, Plaintiff cannot base a breach of contract claim on that legal theory. Additionally, "will not be tolerated" is not "a promise of specific treatment in a specific situation."

Plaintiff next cites to the Boeing Employee Corrective Action Process Requirements ("ECAPR") and the company's "Workplace and Sexual Harassment Policy" as written promises from Defendant which it breached in the course of investigating both his and McCarty's complaints. However, as Defendant points out, Plaintiff's amended complaint makes no mention of these documents under his "Breach of Contract" claim. (Amended Complaint ¶¶ 4.16-4.19.) That cause of action is solely plead on the basis of the Boeing Code of Conduct, and Plaintiff will not be permitted, in his response to a summary judgment motion, to suddenly announce a previously-undisclosed legal theory based on documents never before referenced in his pleadings. While Defendant obviously was able to respond to the new arguments in its reply brief, it has had no opportunity to conduct discovery based on this theory of liability and it is unfair and impermissible for Plaintiff to raise it at this juncture.[9]

**Conclusion**

The Court can find no genuine issue of material fact and, even viewing those facts in the light most favorable to Plaintiff, must still conclude that Defendant is entitled to judgment as a matter of law on all claims Plaintiff has asserted against it. Summary judgment will therefore be GRANTED, and Plaintiff's lawsuit will be DISMISSED with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 20, 2018.

_(signature)_
The Honorable Marsha J. Pechman
United States Senior District Court Judge

---

[9] Additionally, Boeing cites to precedent concluding that the ECAPR's "disciplinary matrix is merely a guideline for management" that "did not provide a promise of specific treatment in a specific circumstance." Quedado, 168 Wn.App. at 372.

ORDER ON SUMMARY JUDGMENT - 13